By the Court.
This being an acquisition by purchase on the part of John and Thomas Swann, the wife of the Defendant, is clearly entitled as heir, according to the several decisions which have been made to that effect.
Judgment must be entered up accordingly.
Daniel, Judge,
(who sat for Judge Henderson :)
The two tracts of land known by the name of the Elm plantation, were devised in tail by Samuel Swann the elder, to his first, second, third and fourth sons in succession. Samuel Swann the younger, the devisee, was seised and possessed of the Elm plantation at the time entails were docked by the act of 1784, ch. 22. The other tract mentioned in the special verdict, Samuel Swann the younger, held in fee.
Samuel Swann the younger made and published his last will, on the 24th May, 1786, and therein and thereby devised the Elm plantation, to his brother, John Swann, in fee. John Swann is considered in law as the purchaser of tiiis plantation, as he did not get title thereto by descent.
*404 John Swann died intestate, leaving an only child, named Samuel Johnston Swann, an only maternal half sister, by the name of Rebecca!» Blount (who married the Defendant) and the lessors of the Plaintiff, who are his second cousins of the paternal line," all his brothers having died without issue.
Samuel Swann the younger, devised the other tract of land to his brother, Thomas Swann, in fee; and Thomas Swann, the devisee, having died without issue, this tract descended to his nephew, Samuel Johnston Swann. Thomas Swann is to be considered a purchaser of this tract of land, and, as he stood precisely in the same relation to the lessors of the Plaintiff, audio the Defendant, as John Swann the younger did, the person or persons who are entitled to the Elm plantation, will be entitled to the tract devised to him.
Samuel Johnston Swann died intestate and without issue, or brothers or sisters, or the issue of such. And the question submitted to this Court is, who are the heirs of Samuel Johnston Swann ?
At the common law, the heir would be searched for among the lessors of the Plaintiff. 1st. Because they are of the paternal line and of the male stock, to-wit, the grandchildren of William Swann, who was the brother of Samuel Swann the elder, and great uncle of Samuel Johnston Swann. 2d. Because Mrs. Shepard is of the half blood and never could have inherited.
Samuel Johnston Swann dying without issue, or brother or sister, or the issue of such, leaves the case exactly in the same situation as if John and Thomas Swann, the purchasers, had died intestate and without issue. The same person who would have been the heir of John Swann, had he died without issue, is the heir of Samuel Johnston Swann.
The great and general principle, upon which the law of collateral inheritances depends, is this, that upon the failure of issue in the last proprietor, the estate shall descend to the blood of the first purchaser. He who would have been *405 heir lo the father of the deceased, shall also be heir to the son.*
'When a man takes an estate by -purchase, be takes it not 'ut feudum paternnm or maternum, which would descend only to the heirs on the side of the father or mother; but he takes it as a feudom iwcum,' to be held ut feudom anii-qnm, as a feud of indefinite antiquity, whereby it becomes inheritable to his heirs general, first of the paternal and then of the maternal line. The blood of the father is more worthy and more near in judgment of law.† Lord Coito says, every person has four immediate bloods in him, two on the part of the father, to-wit, his paternal grandfather’s blood, and his paternal grandmother’s blood : and two on the side of his mother, Ms maternal grandfather’s blood, and his maternal grandmother’s blood. If a man purchase land and die without issue, or brother or sister, or the issue of such, his eldest paternal uncle would take : If there be no paternal uncle, or the issue of such, then his paternal aunts ; if there be neither, nor the issue of such, then his eldest great uncle of the line of his paternal grandfather, and so on until that line be exhausted; always giving a preference to the male stocks. On the failure of blood or kindred in the line of the paternal grandfather, then tire same rule is to be followed as to the paternal grandmother’s line. If that fail, then the maternal grandfather’s line is to inherit. On the failure of that line, then the maternal grandmother’s line is to be sought for, and it shall inherit according to the rule aforesaid.‡
The case does not state, which of the lessors of the Plaintiff is the issue of the eldest son of William Swann. One of them certainly is ; and that person would have been the heir of Samuel Johnston Swann at common law. Let us enquire into the changes which the Legislature has made of these rules of the common law, and into the extent and reason of those changes.
*406 In consequence of the revolution, the people of this State formed a republican government, and it became necessary in defending this form of government, that the aristocrati-caj doctrine of primogeniture, in the descent of real estates, should be exploded, the principles contained in the statute de donis conditionalibus be no longer enforced, joint tenancy, with its jus accrescendi, be abolished, and the half blood, (which had been entirely excluded) let in, when it was in the line of inheritance. In short, it became necessary, for the welfare of the government, that landed estates should undergo a more general and equal distribution than had hitherto prevailed. The Legislature never meant to change or alter the stocks or geneological lines, from what they were known to be at the common law. The stocks and lines remain the same, with the addition of the half blood, when in those lines, together with the ascent of real estates in certain cases.
It is in general true, that the preamble of a statute is a key stone to open the mind of the makers, as to the mis-chiefs intended to be remedied by the statute. But this rule must not be carried so far as to restrain the general words of an enacting clause, by the particular words of the preamble. The preamble to every section of the act of 1784, ch. 22, clearly explains the intention of the Legislature. The preamble to the 2d section, shews the will of the Legislature to promote an equality of property, by a more general and equal distribution of landed estates j or in other words, to destroy the rule of primogeniture — the second section then lets in all the sons : on failure of them and their issue, it lets in all the daughters. The preamble to the third section complains only of the exclusion of the half blood from the inheritance; the section then lets in the half blood, hut does not destroy the slocks or lines, as established by the common law. There is no complaint of the common law stocks and lines. This section declares, (though certainly in terms not very clear) that the old rule relative to stocks and lines shall remain; but that *407 the half blood shall inherit equally with the whole blood, when it is found in those lines, and in equal degree. And it clearly intimates fay the proviso, that the half blood shall not inherit when out of the common law stocks or lines, although in equal or in a nearer degree. Thus when land descends on the side of the father to a son, afterwards the son dies without issue, but has a half blood brother on the maternal side, and an uncle or more remote relation of the whole or half blood, on the paternal side : the relation next in degree on the paternal side, shall inherit, to the exclusion of the maternal half brother : because, 1st. He is of the blood of the first purchaser. 2d. The proviso to the third section expressly enacts, that the maternal half brother shall not inherit, until such paternal line be exhausted of the half blood, (and of course, of the whole blood.) The maternal brother is not to be let into the inheritance as soon as the paternal line is exhausted of brothers and sisters : the act says, he shall not inherit until the paternal line be exhausted of the whole and half blood. Heirs shall be sought for on that line, ad infinitum, before any of the maternal kindred shall inherit, no matter how near in degree. And the same rule e converso, when land shall descend on the maternal side. The paternal kindred shall be excluded as long as any whole or half blood can be found on the maternal side, let it be ever so remote.
The fourth section extends the rules laid down in the second section relative to lineal descendants, and, in the third section, relative to collateral relations, ad infinitum.
That this is the most proper construction, wrill manifestly appear from reading the rules of the common law, and then the third and fourth sections of the act of 1784, ch. 22. This construction does not clash with any of the grand objects which were in the view of the Legislature at the time the act was passed; but runs in unison with them. It is agreeable to justice that those who are of the blood of him who has labored for and purchased the land, should inherit; and not a stranger. If this construction *408 be not adopted, tlie land might descend to a stranger in two changes ; to-wit, A purchases land, and dies, leaving a son B. The widow marries again, and has a son C. dies without issue, and the lands descend to C, his maternal half brother, who is not of kin to A, the first purchaser. Such a construction was never intended by the L egislature. The kindred of A, the first purchaser, shall be preferred, no matter how remote ; otherwise industry w ould he cramped, and men become careless of acquiring estates.
The preamble to the fifth section complains of entails ; and the section docks all entasis that are in possession, and turns them into fee simple estates.
The preamble to tlie sixth section complains of the injustice to the family of that joint tenant who shall die first. The section abolishes the principle of survivorship, and turns all joint tenancies into tenancies in common, with one exception.
Tlie preamble to the seventh section complains of the rule which forbids tlie inheritance ever to ascend. “ When lands are purchased, or otherwise acquired,” (but not by descent from a deceased parent,) “ and the owner dies “ without issue, or brother or sister, or the issue of such,” then the seventh section of the act of April, 1784, and the third section of the act of October, 1784, let in the father first j and, if lie be dead, then the mother for life; and then the heirs on the part of the father; and, if none on his side, Cad infinitum, J then tlie heirs on the part of the mother.
The reason given for this rule by the Legislature is, that the paternal line is favored in all instances.
Mrs. Shepard, the wife of the Defendant, is heir to the lands in dispute, because she is next in the degree of the blood of the purchasers, John and Tilomas Swann, being a sister: and, although of the half blood, the third and fourth sections of the act of 1784, maleo her capable of in be citing. But if Mrs. Shepard should die without issue, then the next heir to these lands would not be of her father’s line, (the Blount family,) because none of the blood of the pur *409 chasers can be found in that line. They must be the persons who are next in degree and of the Mood of John and Thomas Swann: 1st. of the paternal line, (and these would be the lessors of the Plaintiff,) and when that line is exhausted, then 2dly, the maternal line of John and Thomas Swann shall inherit, as they shall he nearest in degree, until it shall be exhausted; always giving preference to the paternal or male stocks, as known at the common law 3 and is clearly intimated by the seventh section of the act of April, 1784, and positively declared by the third section of the act of October, 1784. Let judgment he entered for the Defendant.

 2 Black. Com. 226.

 Coke Litt, 12. b.

 Coke Lilt. 12 a. 12 b.